UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
FABRIQUE INNOVATIONS, INC., *d/b/a Sykel
Enterprises*,

                        Plaintiff,

-against-

FEDERAL INSURANCE COMPANY,

                        Defendant.
------------------------------------x

MEMORANDUM DECISION
AND ORDER

17 Civ. 737 (GBD) (GWG)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: MAR 2 6 2020

GEORGE B. DANIELS, United States District Judge:

Plaintiff Fabrique Innovations, Inc., doing business as Sykel Enterprises, commenced this action alleging that Defendant Federal Insurance Company breached its contractual obligations under an Ocean Cargo Insurance policy (the "Policy") by denying coverage for a claim that Plaintiff submitted in connection with loss of certain of its goods (the "Goods") in 2016. (Compl., ECF No. 1.) By Amended Memorandum Decision and Order dated January 4, 2019, this Court denied Defendant's motion for summary judgment on the issue of Defendant's liability, and granted Plaintiff's cross-motion for summary judgment, finding that Plaintiff had established a prima facie case for recovery under the Policy. (Am. Mem. Decision and Order, ECF No. 68.) Plaintiff now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 on the issue of the amount of its damages. (Pl.'s Notice of Mot. for Summ. J., ECF No. 73.) Plaintiff's motion for summary judgment on damages is GRANTED.[1]

---

[1] This Court denies Defendant's motion for leave to file a sur-reply. (Pl.'s Letter dated Apr. 15, 2019, ECF No. 83.)

## I. FACTUAL BACKGROUND

### A. The Policy.

The Policy that Plaintiff purchased from Defendant, as later modified by an endorsement, provides coverage for "direct physical loss or damage to merchandise in transit caused by or resulting from a covered peril while such merchandise is temporarily in storage . . . subsequent to leaving the point of origin for commencement of transit; or . . . in anticipation of transit." (Decl. of Andrew N. Bourne ("Decl."), Ex. 3 (Policy and Endorsement), ECF No. 74-3, at FEDERAL_001362.) "Merchandise in transit" is defined in the Policy as, *inter alia*, Plaintiff's "business personal property" that is "shipped by or consigned to [Plaintiff], or shipped by or consigned to others for [Plaintiff's] account," and are either "intracompany shipments" or property "for which [Plaintiff] ha[s] agreed in writing, prior to loss or damage, to provide insurance." (*Id.* at FEDERAL_001336.)

The Policy also provides "Automatic Extensions of Coverage." (*Id.* at FEDERAL_001310–12.) One such "Automatic Extension of Coverage" is "Sue and Labor," which provides that Defendant "will reimburse [Plaintiff] or [its] assignee for charges reasonably incurred pursuant to the Duty of the Insured Common Policy Condition of this policy, whether the efforts are successful or not." (*Id.* at FEDERAL_001312.) The "Duty of the Insured Common Policy Condition," in turn, states:

> In the event of actual or imminent loss or damage, it is your duty and the duty of any assignee of your rights hereunder to take all reasonable measures to avert or minimize loss or damage to which this insurance applies and to ensure that all rights against third parties are preserved and exercised.

(*Id.* at FEDERAL_001371.)

### B. The Loss of the Goods and the Hancock Adversary Proceeding.

In October 2015, Plaintiff and non-party Hancock Fabrics Inc. ("Hancock") reached a business arrangement under which Hancock would store Plaintiff's goods at Hancock's storage facility in Baldwyn, Mississippi (the "Hancock Warehouse") and ship those goods to Plaintiff's customers, and would also sell Plaintiff's goods in Hancock's own stores. (Pl.'s Statement Pursuant to Local Rule 56.1 of Material Facts Not in Dispute in Supp. of Its Mot. for Summ. J. ("Pl.'s 56.1 Stmt."), ECF No. 75, ¶ 14; Def. Federal Insurance Company's Resp. to Pl.'s Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 ("Def.'s 56.1 Stmt."), ECF No. 79, at 6.) In connection with this arrangement, Plaintiff requested that Defendant add the Hancock Warehouse as a covered location to the Policy. (Pl.'s 56.1 Stmt. ¶ 1; Def.'s 56.1 Stmt. at 1.) Shortly thereafter, in October and November 2015, Plaintiff shipped the Goods to the Hancock Warehouse. (Pl.'s 56.1 Stmt. ¶ 15; Def.'s 56.1 Stmt. at 6.) Plaintiff alleges that the total value of the Goods was approximately $1.15 million. (Pl.'s 56.1 Stmt. ¶ 16.)

On February 2, 2016, Hancock filed a voluntary Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of Delaware. (Pl.'s 56.1 Stmt. ¶ 18; Def.'s 56.1 Stmt. at 7.) After Plaintiff objected to Hancock retaining the proceeds of the sale of the Goods in bankruptcy, Hancock commenced an adversary proceeding against Plaintiff on March 24, 2016, seeking a declaration that Hancock's interest in the Goods was superior to that of Plaintiff. (Pl.'s 56.1 Stmt. ¶ 19; Decl., Ex. 9 (Adversary Proceeding Compl.), ECF No. 74-10.) According to Plaintiff, Hancock sold all of the Goods and continued to report sales through the end of March 2016, but made no payments to Plaintiff after January 2016. (Pl.'s 56.1 Stmt. ¶¶ 21–22.) Specifically, Plaintiff claims that prior to Hancock's liquidation, Hancock sold approximately $214,066.41 worth of Goods, but paid Plaintiff only $100,159.79. (*Id.* ¶ 17; *see also* Decl., Ex. 7

(Sales and Payments Spreadsheet), ECF No. 74-8, at FEDERAL_000571–75.) Moreover, according to bankruptcy filings, Hancock shipped an additional $3,691.21 worth of Goods to Plaintiff's customers after February 2016. (Am. Compl., Ex. A (Post-Pet. Transfers), *Hancock Fabrics, Inc. v. Sykel Enterprises, A Divison of Fabrique Innovations, Inc.*, No. 16-50418 (BLS) (Bankr. D. Del. Mar. 8, 2017), ECF No. 39.)

Plaintiff and Hancock ultimately entered into a settlement agreement resolving the adversary proceeding. (Pl.'s 56.1 Stmt. ¶ 23; Def.'s 56.1 Stmt. at 8; Decl., Ex. 11 (Order Approving Settlement Agreement), ECF No. 74-12.) Under the terms of the settlement agreement, Hancock disclaimed liability but agreed to pay Plaintiff $250,000, which was to be "allocated proportionally to [Plaintiff's] claims for (a) loss of goods valued by [Plaintiff] at $1,172,731.00 based on their wholesale price, and (b) lost profits and consequential damages valued by [Plaintiff] at $3,000,000." (Decl., Ex. 11 (Order Approving Settlement Agreement), at Ex. 1 ¶¶ 1, 4.) Accordingly, $70,261.60 of the $250,000 was allocated for the loss of Goods. Plaintiff alleges that it incurred $555,904.47 in legal fees in attempting to recover the Goods from Hancock in connection with the adversary proceeding. (Pl.'s 56.1 Stmt. ¶¶ 26–27.)

## C. Plaintiff's Insurance Claim and Defendant's Investigation of the Claim.

After Plaintiff filed a claim for the Goods under the Policy, Defendant assigned Sharon Direso to adjust the claim, and retained a surveyor to investigate the loss on behalf of Defendant. (Pl.'s 56.1 Stmt. ¶ 28; Def.'s 56.1 Stmt. at 10.) In the surveyor's preliminary report to Defendant, he stated that "commencing October 15, 2015 through end of November 2015, [Plaintiff] shipped approximately 20 tractor trailer loads totaling 320,451 pieces of a variety of plush blankets with sport team logos and stuffed animals to their customer, Hancock . . ., whose business operation is located at One Fashion Way in Baldwyn, Mississippi." (Pl.'s 56.1 Stmt. ¶¶ 30–31; Def.'s 56.1

4

Stmt. at 11; Decl., Ex. 16 (Prelim. Report), ECF No. 74-17, at FEDERAL_000136.) The surveyor also stated in his report that Hancock sold a small portion of the Goods and that "the whereabouts of the remaining inventory" was "uncertain." (Pl.'s 56.1 Stmt. ¶ 32; Def.'s 56.1 Stmt. at 12; Decl., Ex. 16 (Prelim. Report), at FEDERAL_000139.)

Based on this report, Defendant did not dispute that Plaintiff "shipped, approximately, 20 tractor trailers totaling []320,451 pieces of a variety of plush blankets with sport team logos and stuffed animals to Baldwyn, Mississippi." (Decl., Ex. 13 (Sharon Direso Dep. Tr.), ECF No. 74-14, at 168:5–10.) Defendant's 30(b)(6) corporate designee testified at her deposition that these pieces "fit th[e] definition" of "merchandise insured under the policy." (*Id.* at 168:11–13.) She further testified that she "do[es]n't believe [Defendant] ever disputed" "the value of the, approximately, 20 tractor trailer loads of goods that were shipped to the Hancock facility," and that she has "never gotten anything to the contrary" as to whether "the value of it was, approximately, $1.2 million." (*Id.* at 173:20–174:4.)

On January 3, 2017, Defendant issued its letter denying coverage for the Goods. (Decl. of Philip C. Silverberg, Ex. 1 (Denial Letter), ECF No. 77-1.) The letter stated that Defendant "must deny coverage on grounds that there has not been 'direct loss or damage to *merchandise in transit*." (*Id.* at FEDERAL_000002.) It further stated that while conversion of the Goods "could constitute a 'loss' . . . the available information does not indicate that Hancock converted the [Goods]." (*Id.*) Defendant then stated that there was no conversion of the Goods because "Hancock claims a legal right to the [Goods]." (*Id.*)

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "An issue of

5

fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material when it "might affect the outcome of the suit under the governing law." *Gayle*, 313 F.3d at 682 (quoting *Anderson*, 477 U.S. at 248).

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). In turn, to defeat a motion for summary judgment, the opposing party must raise a genuine issue of material fact. *See Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002). To do so, it "must do more than simply show that there is some metaphysical doubt as to the material facts," *id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), and it "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)). Rather, the opposing party must produce admissible evidence that supports its pleadings. *See First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289–90 (1968). In this regard, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the opposing party and draw all inferences in that party's favor. *See id.* However, "a court must not weigh the evidence, or assess the credibility of witnesses, or resolve issues of fact." *Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016) (citation

omitted). Summary judgment is therefore "improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Marvel*, 310 F.3d at 286.

### III. THE GOODS WERE "MERCHANDISE IN TRANSIT"

Plaintiff argues that there is no genuine issue of material fact with respect to the calculation of its damages, (Pl.'s Mem. of Law in Supp. of Its Mot. for Summ. J. on the Issue of Damages ("Pl.'s Mem."), ECF No. 76, at 6), and that the value of the missing Goods, minus the credits for Plaintiff's recovery from Hancock, is $998,618.40, (Pl.'s Reply Mem. of Law in Further Supp. of Its Mot. for Summ. J. on the Issue of Damages ("Pl.'s Reply"), ECF No. 82, at 6). Specifically, Plaintiff contends that because it provided $1,172,731.00 worth of Goods to Hancock, and because it recovered (1) $70,261.60 through its settlement agreement with Hancock, (2) $100,159.79 through payments from Hancock through January 2016, and (3) $3,691.21 through payments from Hancock after February 2016, the value of the missing Goods to which Plaintiff is entitled is $998,618.40. (*Id.* at 6.)

Defendant, on the other hand, insists that there are genuine issues of material fact about (1) what, if any, of the Goods for which Plaintiff is seeking to recover damages were "merchandise in transit" covered under the Policy, and (2) the quantity of the Goods that were stored at the Hancock Warehouse at the time of the loss. (Mem. of Law of Federal Insurance Company in Opp'n to Pl.'s Mot. for Summ. J. on the Issue of Damages ("Def.'s Opp'n"), ECF No. 78, at 8.) First, Defendant claims that the Goods at issue were not "merchandise in transit" as defined in the Policy because they were sent to a warehouse owned by a third party—that is, Hancock—rather than to a warehouse owned by Plaintiff, and therefore are not "intracompany shipments." (*Id.* at 8–9; *see also* Decl., Ex. 3 (Policy and Endorsement), at FEDERAL_001336 (listing "intracompany

7

shipments" as one of several enumerated categories of "merchandise in transit").)[2] Defendant concedes that the term "intracompany shipments" is not defined in the Policy, but claims that "'intracompany is commonly understood to mean 'occurring within or taking place *between branches or employees of a company*.'" (Def.'s Opp'n at 8–9 (quoting Merrian-Webster.com).) Defendant additionally argues that the quantity of the Goods at issue is unclear because Plaintiff demonstrates "only what items were sent to the [Hancock] Warehouse and their price," but not "what items remained in the [Hancock] Warehouse at the time of the loss." (*Id.* at 11–12.)

Contrary to Defendant's assertions, the record establishes both that the Goods at issue were "intracompany shipments" and, therefore, "merchandise in transit," and that the value of the Goods, minus the credits for Plaintiff's recovery from Hancock, is $998,618.40.

As an initial matter, the time for Defendant to have challenged whether the Goods qualify as "merchandise in transit" was at the liability stage, when both parties cross-moved for summary judgment on the issue of whether Plaintiff established a prima facie case for recovery under the Policy. Defendant did not advance any such argument, however, and instead chose to argue that coverage was barred by the Policy's "dishonest acts" and "willful misconduct" exclusions, that there was no coverage for losses arising from a bad business deal, and that Plaintiff's notice in reporting its claim was late. (Mem. of Law in Supp. of Mot. for Summ. J. of Def. Federal Insurance Company, ECF No. 40.)

---

[2] Defendant separately argues that the Goods are not "merchandise in transit" because they are not property "for which [Plaintiff] ha[d] agreed in writing, prior to loss or damage, to provide insurance." (Def.'s Opp'n at 1; *see also id.* at 9; Decl., Ex. 3 (Policy and Endorsement), at FEDERAL_001336 (listing property "for which [Plaintiff] ha[d] agreed in writing, prior to loss or damage, to provide insurance" as one of several enumerated categories of "merchandise in transit").) Because this Court finds for the reasons stated herein that all of the Goods at issue are "intracompany shipments" and therefore qualify as "merchandise in transit," it need not determine whether they also qualify under an alternative ground.

8

Notwithstanding Defendant's failure to argue previously that the Goods are not "merchandise in transit," any such argument is without merit. "Under New York insurance law, the plain language of an insurance policy is construed 'in light of "common speech" and the reasonable expectations of a businessperson.'" *U.S. Fid. & Guar. Co. v. Fendi Adele S.R.L.*, 823 F.3d 146, 150 (2d Cir. 2016) (citations omitted). Defendant tries to assert that "intracompany shipment" is only a shipment from one warehouse owned by Plaintiff to another warehouse owned by Plaintiff, based upon a dictionary definition of "intracompany" as "occurring within or taking place between branches or employees of a company." (Def.'s Opp'n at 8–9 (quoting Merrian-Webster.com).) As Plaintiff correctly observes, however, "the Policy says nothing about ownership." (Pl.'s Reply at 3.) Here, as the record undisputably establishes, Plaintiff moved the Goods from one warehouse covered under the Policy to another covered warehouse, which fits within the Policy's definition and the "reasonable expectations of a businessperson," *U.S. Fid. & Guar. Co.*, 823 F.3d at 150, of "intracompany." Indeed, Defendant's own 30(b)(6) corporate designee testified that the Goods at issue "fit th[e] definition" of "merchandise insured under the policy." (Decl., Ex. 13 (Sharon Direso Dep. Tr.), at 168:11–13.) Accordingly, the Goods at issue were "merchandise in transit" and covered under the Policy.

Defendant's argument as to the quantity of the Goods is similarly unavailing. Plaintiff submitted a spreadsheet clearly documenting the items sold by Hancock and payments made by Hancock to Plaintiff. (Decl., Ex. 7 (Sales and Payments Spreadsheet), at FEDERAL_000571–75.) The spreadsheet details the sales of Goods by Hancock between January 20, 2016 and March 28, 2016, as well as the fact that Hancock did not pay Plaintiff for those sales. (*See id.*) In the event that it is "unclear whether certain transactions after January 20, 2016 involving the third-party logistics agreement [between Plaintiff and Hancock] are reflected on the spreadsheet," Plaintiff

9

gave an additional credit of $3,691.21 for those transactions. (Pl.'s Reply at 6.) Given this clear record, and Defendant's failure to sufficiently provide any basis to question its accuracy, there is no reasonable dispute of fact as to the value of the missing Goods.

## IV. PLAINTIFF IS ENTITLED TO ITS TOTAL SUE AND LABOR EXPENSES INCURRED IN THE BANKRUPTCY ACTION

According to Plaintiff, it is also entitled to Sue and Labor expenses in the amount of $555,904.47, (Pl.'s Mem. at 8), which it allegedly incurred in connection with its efforts to recover the Goods from Hancock in the adversary proceeding, (*id.* at 4). In support of this claim, Plaintiff refers to the provision of the Policy stating that Defendant "will reimburse [Plaintiff] or [its] assignee for charges reasonably incurred pursuant to the Duty of the Insured Common Policy Condition of this policy, whether the efforts are successful or not." (Decl., Ex. 3 (Policy and Endorsement), at FEDERAL_001312.) Plaintiff also relies on the Second Circuit's decision in *Armada Supply Inc. v. Wright*, 858 F.2d 842 (2d Cir. 1988), for the proposition that "all reasonable costs incurred by an insured to mitigate its damages and reduce its insurer's exposure are recoverable Sue & Labor expenses." (Pl.'s Mem. at 8.) Plaintiff asserts that it is therefore entitled to the entirety of its Sue and Labor expenses for "its attempts to recover the [G]oods and its successful, albeit partial, minimization of the loss" through its settlement of the adversary proceeding with Hancock. (*Id.* at 9.)

Although Defendant does not dispute that Sue and Labor expenses are covered under the Policy, it contends that coverage is available only "where an insured's actions were closely tied to preserving the insured property." (Def.'s Opp'n at 12–13.) Defendant argues that there are genuine issues of material fact about Plaintiff's claimed Sue and Labor expenses because Plaintiff has not demonstrated that the "entirety" of the expenses "was incurred to avert or minimize covered loss." (*Id.* at 12.) Rather, Defendant contends, the "majority" of the expenses was for

10

consequential damages, which are not covered. (*Id.* at 13.) Defendant points, in particular, to the settlement agreement between Plaintiff and Hancock, under which Hancock's settlement payment was allocated proportionally between Plaintiff's claims for the loss of the Goods, which Plaintiff and Hancock agreed was valued at $1,172,731, and Plaintiff's claims for consequential damages, which was valued at $3,000,000. (*Id.*; *see also* Decl., Ex. 11 (Order Approving Settlement Agreement), at Ex. 1 ¶ 4.) Defendant also asserts that the "*actual* amount of [the claimed Sue and Labor] expenses is uncertain at best," given that Plaintiff has allegedly submitted no evidence "indicating to what extent those fees *actually* were incurred in connection with a recoverable Sue and Labor expense," or "showing what was included in the claimed costs[,] what work the attorneys were performing[, or] *how* any [of] the purported legal work related to the bankruptcy proceeding." (Def.'s Opp'n at 14.)

Under Second Circuit precedent, Plaintiff is entitled to the full Sue and Labor expenses amount of $555,904.47. Specifically, in *Armada*, the Second Circuit reversed the district court's denial of the insured's claim as a sue and labor expense for legal expenses that it incurred in pursuing a breach of contract lawsuit. 858 F.2d at 854–55. The Second Circuit reasoned that the insured "spent these sums in order to sell the cargo, and they were expenses that would not have been incurred if there had not been a casualty." *Id.* It further found that the insurer "saved money as a result of [the insured's] efforts and therefore should bear the costs of those savings." *Id.* (citation omitted). Here, Plaintiff similarly incurred its Sue and Labor expenses, all of which were reasonably related to its claim for loss, in order to maximize its recovery from Hancock, and to the benefit of Defendant. Plaintiff is therefore entitled to the entirety of its Sue and Labor expenses.

11

## V. PLAINTIFF IS ENTITLED TO PREJUDGMENT INTEREST

Finally, Plaintiff is entitled to prejudgment interest. "An insurance company must normally pay pre-judgment interest when it breaches an insurance contract." *Varda, Inc. v. Ins. Co. of N. Am.*, 45 F.3d 634, 640 (2d Cir. 1995) (citations omitted). Under New York law, "[i]nterest shall be computed from the earliest ascertainable date the cause of action existed." *Id.* (alteration in original) (quoting N.Y. C.P.L.R. § 5001(b)). "The 'earliest possible date' in contract actions arises when the alleged breach occurred[.]" *Onecall Ltd. v. iYogi, Inc.*, No. 16 Civ. 766 (KBF), 2016 WL 6068198, at *3 (S.D.N.Y. Oct. 14, 2016) (quoting *McNally Wellman Co. v. N.Y. State Elec. & Gas Corp.*, 63 F.3d 1188, 1200 (2d Cir. 1995)). Here, Defendant's breach of the Policy occurred on January 3, 2017, when it denied coverage for the Goods. As such, Plaintiff is awarded prejudgment interest running from that date.

## VI. CONCLUSION

Plaintiff's motion for summary judgment, (ECF No. 73), is GRANTED. Defendant's motion for leave to file a sur-reply, (ECF No. 83), is DENIED. The Clerk of Court is directed to close the motions accordingly.

Dated: New York, New York
March 26, 2020

SO ORDERED.

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge